IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GORDON McMAIN,

           Petitioner,

     v.

BRAD CAIN,

           Respondent.

Case No. 2:20-cv-00109-HZ

OPINION AND ORDER

Anthony D. Bornstein
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

      Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Samuel A. Kubernick, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

      Attorneys for Respondent

1 – OPINION AND ORDER

HERNANDEZ, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his Multnomah County convictions from 2011. For the reasons that follow, the Petition for Writ of Habeas Corpus (#1) is granted.

## BACKGROUND

Petitioner and his mother, Marcy Ferris, had a tumultuous relationship. The pair frequently argued and, on more than one occasion, these arguments escalated to the point where Petitioner became physically violent toward Ferris. Ferris ultimately went to the authorities who arrested Petitioner, and the Multnomah Grand Jury indicted him on three counts of Assault in the Fourth Degree (constituting domestic violence), three counts of Coercion (constituting domestic violence), three counts of Harassment, and one count each of Kidnapping in the Second Degree, Identity Theft, Strangulation, Forgery in the Second Degree, Mail Theft, Criminal Mischief in the Second Degree, and Menacing. Respondent's Exhibit 102.

The Multnomah County Circuit Court appointed Ronald Fishback as Petitioner's counsel. Sometime during June 2011, Fishback passed the case to James Britt, an associate attorney within the same law firm. After an initial investigation, Britt and his investigator (James Greve) were of the opinion that the case against Petitioner was strong because Ferris was willing to testify against him as was her neighbor and friend, Kathy McMahon, who had been an eyewitness to much of the violence and/or the injuries Ferris suffered as a result of Petitioner's

abuse. It appears from the record that Petitioner did not agree with the assessment, and was focused on obtaining his mental health records in an effort to defeat the charges.

Britt, Greve, and Petitioner all met on July 22, 2011. According to Petitioner, that meeting did not go well. He claims that Britt, who was African-American, read in a police report that Petitioner had uttered a racial epithet that prompted Britt to declare that he was "done" with Petitioner. At that point, Britt and Greve abruptly walked out of the meeting. Respondent's Exhibit 139, p. 2.

On September 9, 2011, Judge Marshall held a settlement conference at the Multnomah County Circuit Court. According to Petitioner's filings, this took him by surprise because he had not received any prior communication that the event would take place. During that conference, Petitioner requested substitute counsel without success, and the case did not settle. *Id* at 1-2.

Petitioner next met with Britt at the Multnomah County Jail on Sunday, September 18. It appears the State had offered Petitioner a 35-month plea deal back in August. At the September 18 meeting Britt asked Petitioner, "why are we having so much trouble getting this thing done?" Respondent's Exhibit 139, pp. 3-4. Petitioner described the remainder of the interaction as follows:

> I stated that I no longer could have him
> represent me. He then asked me why I was
> acting like a little kid and that decision
> wasn't up to me. I did not respond and hit
> the call switch. Mr. Britt got up and turned
> it off saying that trial begins Sept. 20 and

> wa[]ved off the deputy. I told the deputy
> that I was done. Mr. Britt told me that I
> was going to prison for a very long
> time. . . .

*Id.*

Petitioner's trial was set for the afternoon of September 20 with Judge Bushong presiding as the trial judge. That morning, Petitioner proceeded to a second settlement conference where Judge Bergstrom attempted to settle the case. The case did not settle and Petitioner once again asked for new counsel. Judge Bergstrom instructed him to bring the issue up with Judge Bushong at trial later that day. Respondent's Exhibit 103, p. 12.

Petitioner proceeded to trial that afternoon with Judge Bushong presiding as the trial judge, Britt still acting as Petitioner's attorney, and Jenna Plank representing the State. At the very outset, Petitioner submitted a written request for substitution of attorney, attached an undated Bar Complaint he had drafted against Britt, and informed the trial judge that he and Britt had an ongoing conflict:

> COURT:  Mr. McMain, do you want to be
> heard at this time?
>
> DEF'T:  Yes, please.  I . . . formally
> asked this guy for a substitution of
> attorney, and I read – wrote the DA on very
> short notice, I didn't even know I had five
> working days to try and figure this out. And
> I hear — if you want to read — this is what
> I did.  And I need to – I need a new
> attorney.  And this is my formal complaint
> that  –  that  he  was  even  called  by
> correctional staff – to tell him that I no
> longer could use him. And they're the one[s]

> that gave me this complaint. So I – yeah.
> Like I'm not ready to proceed right now,
> Your Honor.

*Id* at 10-11 (bold added).

Petitioner's written request to substitute counsel read as

follows:

> I need to formally request a substitution of
> attorney. I do not feel that my present
> attorney James Brit[t] is or has represented
> me in an impartial manner.
>
> On advice from the Mental Health Dept and
> corrections counselor [I] have requested a
> Psych Evaluation. On July 25 I signed a
> release of information and discussed the
> possibility of a bi polar disorder with the
> investigator.
>
> On August 12 in a brief phone conversation I
> reminded Mr. Britt of the records and
> requested a Psychological Eval and couldn't
> accept or deny any deal until the Eval. He
> said he would look into it and call me back
> on 8/16. He did not.
>
> On Sept. 9, four weeks to the day. I was
> transported to court with no prior
> knowledge. I had an impromptu meeting with a
> Judge who was not presiding over my case and
> Mr. Brit[t] with no DA.
>
> I expressed my concern of proceeding without
> knowing the status of my mental health and
> the contempt for me that Mr. Britt has
> displayed.
>
> Also at that time I verbally requested a new
> attorney and was mocked and told "You can
> hire one."
>
> All that considered, it's the racial slur in
> my police report that has truly offended
> him. After he read that in an Interview on

> July 22 he got up and walked out telling his
> Investigator "I'm done with this guy."
>
> I don't know what the protocol is or who to
> contact so I will write to all concerned.
>
> I was informed at the meeting that I would
> not get another attorney and that if I
> didn't accept the deal right then it was a
> refusal and I would have trial on Sept 19
> just 5 working days notice.
>
> This is not only unfair but because I have
> been incarcerated since April 26 extremely
> unprofessional.
>
> I no longer can use his services on any
> level as legal counsel.

Respondent's Exhibit 139, pp. 1-2. Petitioner also included an addendum summarizing the September 18 meeting where Britt told him to stop "acting like a little kid" when Petitioner asked Britt to cease his representation. *Id* at 4.

After receiving Petitioner's documents, the trial judge denied the request for substitute counsel:

> I – this is the time set for trial and I'm
> going to deny your request for substitution
> of counsel. We're going to proceed to trial
> at this time, and Mr. Britt is going to act
> as your attorney and he will do his very
> best to help you at trial.
>
> * * * * *
>
> DEF'T:    Your Honor, I can't proceed with
> this gentleman. We have not been able to
> work together at all over this course of
> th[ese] five months. I didn't even know
> about this trial.
>
> COURT:    Mr. – Mr. McMain, you were given
> the choice by Judge Bergstrom to decide
> today whether you wanted to go to trial, you

had until 1:30 today. You indicated that by
. . . not telling the Court that you wanted
to accept the offer that the State was
making at that time, your only other option
is to go to trial. So . . . by not accepting
the offer you're electing to go to trial.

DEF'T:   I didn't even – he said that I had
until – I came to before you to make a
decision, which I have – haven't done that
because of the – he said to bring this up in
front of you about the lawyer issue.

COURT:   Okay. Well, I've now denied that –
that question. So if you want – if you want
to make your decision – if you're telling me
you want to now accept the offer, you – I
think you can still do that, Ms. Plank, if
that offer is still available.

But . . . if you don't tell me that, yes, I
want to accept that offer, we're going to
start the trial. Those are the options
available to you.

DEF'T:   I don't understand. How can I get
it to start a trial, you know, I'm not even
prepared.

                    * * * * *

DEF'T:   . . . I have not had time to – or
counsel to prepare a trial I've been waiting
and waiting and waiting. I mean it – I don't
mind waiting. I've set it over for again. I
mean, I've never asked for it setover, I've
never been consulted about a layover – a
setover at all.

COURT:   Okay. Well –

DEF'T:   And I just need time to figure
this out and just – you know –

COURT:   --well, I'll – I'll –

DEF'T:   --I'm not trying to be –

```
COURT:     --I understand now that –

DEF'T:     --a jerk. I'm not trying to be a
jerk, or you – manipulate the system at all.
I'm just trying to go with what's fair –
kind of, you know –

COURT:     All right. No. I –

DEF'T:     -- I know I don't deserve a lot.

COURT:     -- I hear you, you're asking for
more time. That's what you're asking for.

DEF'T:     That – yeah –

COURT:     Okay.

DEF'T:     -- at least to talk to somebody
that's – you know – I –

COURT:     All right.
```

Respondent's Exhibit 103, pp. 10-14.

Having construed Petitioner's continued request for substitute counsel as a request for a continuance, the trial judge allowed Plank to detail the State's opposition to the request. The judge then allowed Britt an opportunity to state his position on the continuance. Once Britt began speaking, Petitioner interjected, "This – this guy doesn't speak for me, Your Honor. I don't want him talking for me anymore." *Id* at 17. The judge advised Petitioner that he would have an opportunity to speak after Britt spoke. *Id*. Petitioner, however, remained adamant on the issue stating, "But he doesn't represent me" and "I don't want him to represent me." *Id*. The trial judge stated

that he understood Petitioner's position but instructed Britt to proceed.

Britt went over his attempts to secure mental health records on Petitioner's behalf, and also indicated that Petitioner did not outwardly display any behavior that might suggest a viable mental health defense to the charges. He further provided the following, part of which generally corroborated Petitioner's version of the contentious September 18 meeting:

> BRITT: We did meet . . . with Judge Marshall on September 9th. Mr. McMain was pretty much the way he is now. In an attempt to – to just kind of flush out what the issues are, I took time out of my schedule on Sunday, forfeited football, which I love, and I went to the jail to see Mr. McMain. Just didn't bring any – I think I brought the offer, but no paper work, nothing – just have a conversation. He refused to talk to me.
>
> As a matter of fact, he jumped up and pushed a button for the guard to come. I waved the guard away. He jumped up again, "No, please help me" – or not "please help me," but, "Come get me. Come get me." So that was the end of that.
>
> I want to make a representation to this Court that Mr. McMain has known what is at stake here, since at least . . . July 22nd of this year. In terms of further mitigation, we have an offer from the State that it's not going to get any better. We can't beat it at trial. This – these are horrible facts. I've told Mr. McMain very clearly that there – I don't believe there's a juror in the entire country, or someone who could make a jury that would [be] empathetic to a

situation. The – the complainant is his
mother.

There's allegations that probably will
support[], I'm quite sure, during the course
of a trial that he's been abusive to his
mom. I don't – I don't think you could do
any worse but spit on maybe the American
flag in front of a bunch of Veterans, you
know, in terms of having a jury that's just
not going to be very – to be empathetic to a
situation.

This isn't a popularity contest. Whether Mr.
McMain likes me or not, doesn't – I don't
lose sleep over that. But I'm not going to
stand before this Court, or any other Court
and purposely not do my best for Mr. McMain
or any other client, because it's really not
about him.

I have to come before this Court on many
occasions and if I – if I misrepresent
myself for – because I don't like Mr.
McMain, then I can never look you in the
eye, Judge, and tell you something without
you looking at me saying, "Mr. Britt, you're
just not a credible person." I'm not going
to do that.

So, in spite [what] of Mr. McMain might
think, I believe I've done everything I can,
given the nature of this case and the – and
the evidence that I believe will come in
from the State's perspective that puts Mr.
McMain in a really bad spot.

And so I would love if he would buck up,
take some responsibility. If he has some
issues, deal with those. This is a time for
him to get a little time out, gather his
thoughts in himself, and move forward. This
is not a – this isn't personal. This is
trying to get your life together and move
forward.

> So thank you for listening. In – in essence
> I've done everything I can, Judge, and I'm
> prepared to move forward.

*Id* at 20-22.

The trial judge then allowed Petitioner an opportunity to

speak:

> COURT:   All right. Mr. McMain, now is your
> turn, if you want to say something to me.
> And I understand you're asking for more
> time, you're asking for a setover. The
> State's opposing me. Mr. Britt has given me
> some information.
>
> So, now it's your turn, if you have any
> other information you'd like me to consider
> before I rule on your request, now is your
> chance.
>
> DEF'T:   They're just trying – this isn't
> fair. I just want a new attorney. That's all
> I want. I just want to work --
>
> COURT:   I've already denied that request.
> And now I'm – now I'm dealing with your
> request for a setover, and I've heard from
> you, I've heard from Ms. Plank, I've heard
> from Mr. Britt, and I'm giving you the last
> word. So if there's anything else you'd like
> to say that I haven't heard, now is your
> opportunity.
>
> DEF'T:   I just don't understand why I
> don't – I can't work through this.
>
> (Pause)
>
> DEF'T:   I – I'm not ready to go to trial.

*Id* at 22-23.

The trial judge acknowledged that it must be a stressful

time for Petitioner, and once again advised him that his two

options were to take the State's plea offer or proceed to trial that day. The judge then denied the request for a setover.

Petitioner proceeded to his jury trial with Britt continuing to represent him. During Britt's closing argument, he told the jury, "This is a horrible case. It's despicable" but he asked the jurors not to "just be disgusted by the conduct and throw up your hands." Respondent's Exhibit 104, pp. 125, 127. He asked the jury to make the State "do [it's] job" and prove its case beyond a reasonable doubt. *Id* at 127. The jury ultimately found Petitioner guilty of all counts with the exception of a single count of Identity Theft. As a result, the trial court sentenced him to 70 months in prison.

Petitioner, ultimately proceeding *pro se,* took a direct appeal which included a Sixth Amendment challenge to the trial court's denial of his request to substitute counsel. Respondent's Exhibit 105. He detailed his efforts to obtain his mental health records for his defense noting that he had been diagnosed with bipolar disorder at the Multnomah County Jail, outlined how he had sought help from the prosecutor to find substitute counsel, described the July 22 meeting wherein Britt "read the word 'N[_____]r' in police reports and said 'I'm done with you' and him and Jim Greve got up and walked out." *Id* at 37-38. The Oregon Court of Appeals affirmed the trial court's decision without issuing a written opinion, and the Oregon Supreme Court denied review. *State v. McMain,* 259 Or. App. 306, 315 P.3d 447 (2013), *rev. denied*, 354 Or. 814, 325 P.3d 33 (2014).

Petitioner next filed for post-conviction relief ("PCR") in Malheur County raising a variety of ineffective assistance of counsel claims he does not argue in this habeas corpus proceeding. The Malheur County Circuit Court denied relief on his claims, the Oregon Court of Appeals affirmed that decision without opinion, and the Oregon Supreme Court denied review. Respondent's Exhibit 144; *McMain v. Cain*, 295 Or. App. 452, 432 P.3d 1213 (2018), *rev. denied,* 364 Or. 749, 441 P.3d 585 (2019).

On January 17, 2020, Petitioner filed this 28 U.S.C. § 2254 habeas case raising 12 grounds for relief. With the assistance of appointed counsel, Petitioner argues that the trial court violated his Sixth Amendment right to counsel and his right to effective assistance of counsel when it denied his pretrial request for substitution of counsel.[1] Respondent asks the Court to deny relief on the Petition because: (1) the state-court denial of his argued claims was not objectively unreasonable; and (2) Petitioner has not met his burden of proof with respect to his many unargued claims.

## DISCUSSION

### I. Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as

---

[1] Appointed counsel fails to describe the claims he is arguing from the *pro se* Petition, but the Court interprets the argument to pertain to the portion of Grounds One and Two of the Petition relating to Petitioner's direct appeal claim that the trial court erred when it denied his request to substitute counsel.

determined by the Supreme Court of the United States;" or
(2) "based on an unreasonable determination of the facts in
light of the evidence presented in the State court proceeding."
28 U.S.C. § 2254(d). A state court decision is "contrary
to . . . clearly established precedent if the state court
applies a rule that contradicts the governing law set forth in
[the Supreme Court's] cases" or "if the state court confronts a
set of facts that are materially indistinguishable from a
decision of [the Supreme] Court and nevertheless arrives at a
result different from [that] precedent." *Williams v. Taylor*, 529
U.S. 362, 405-06 (2000).

Under the "unreasonable application" clause of
§ 2254(d)(1), a federal habeas court may grant relief "if the
state court identifies the correct governing legal principle
from [the Supreme Court's] decisions but unreasonably applies
that principle to the facts of the prisoner's case." *Id* at 413.
The "unreasonable application" clause requires the state court
decision to be more than incorrect or erroneous. *Id* at 410.
Twenty-eight U.S.C. § 2254(d) "preserves authority to issue the
writ in cases where there is no possibility fairminded jurists
could disagree that the state court's decision conflicts with
[the Supreme] Court's precedents. It goes no farther."
*Harrington v. Richter*, 562 U.S. 86, 102 (2011).

In addition to the unreasonable application clause of
§ 2254(d)(1), 28 U.S.C. § 2254(d)(2) allows a petitioner to
"challenge the substance of the state court's findings and
attempt to show that those findings were not supported by

substantial evidence in the state court record." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012). A federal habeas court cannot overturn a state court decision on factual grounds "unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). This is a "'daunting standard—one that will be satisfied in relatively few cases,' especially because we must be 'particularly deferential to our state-court colleagues.'" *Hernandez v. Holland*, 750 F.3d 843, 857 (9th Cir. 2014) (quoting *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004)).

When a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). In such an instance, although the federal court independently reviews the record, it still lends deference to the state court's ultimate decision and will only grant habeas relief if the state court's decision was objectively unreasonable. *Harrington v. Richter,* 562 U.S. 86, 98 (2011); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

## II. <u>Unargued Claims</u>

As previously noted, Petitioner provides argument in support of his claim that the trial court erred when it denied his request to substitute counsel. He does not, however, argue the remainder of his claims, nor has he addressed Respondent's

arguments pertaining to those claims. In this respect, he has not carried his burden of proof with respect to these unargued claims. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (Petitioner bears the burden of proving his claims).

## III. <u>Substitution of Counsel</u>

Petitioner argues that he was the victim of an extensive, irreconcilable conflict with Britt such that the trial court's denial of his request to substitute counsel without an adequate inquiry violated his Sixth Amendment right to counsel. Where the Oregon Court of Appeals denied relief on this claim without issuing a written opinion, this Court conducts an independent review of the record.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. With respect to attorney-client relationships, the Supreme Court has concluded that the right to counsel does not carry with it the guarantee of a "meaningful relationship." *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983). While a meaningful relationship is not assured, "forcing a defendant to go to trial with an attorney with whom he has an irreconcilable conflict amounts to a constructive denial of the Sixth Amendment right to counsel." *Stenson v. Lambert,* 504 F.3d 873, 886 (9th Cir. 2007).

Even "[t]he denial without a hearing of a motion to substitute appointed counsel based on allegations of an 'irreconcilable conflict' implicates the defendant's Sixth Amendment right to counsel." *Schell v. Witek*, 218 F.3d 1023 (9th

Cir. 2000) (en banc). The three factors to consider when assessing whether an irreconcilable conflict existed are: (1) the timeliness of the request to substitute counsel; (2) the adequacy of the trial court's inquiry into his complaint; and (3) the extent of the conflict. *Stenson*, 504 F.3d at 886; *Schell,* 218 F.3d at 1024-25. The Court will explore these factors in turn.

### A.    <u>Timeliness</u>

There is little doubt that Petitioner's request to substitute counsel was not timely where he delivered it to the trial judge the very afternoon his trial was due to commence. However, this is not to say that Petitioner did not attempt to secure substitute counsel in a somewhat timelier fashion.

Eight days before trial, Petitioner asked a correctional officer at the Multnomah County Jail to contact Britt to advise him that Petitioner no longer wanted Britt to represent him, something Petitioner represents the correctional officer did. Respondent's Exhibit 103, p. 11; Respondent's Exhibit 105, p. 44. Petitioner advised Britt at their September 18 meeting that he did not want him to represent him any longer. Respondent's Exhibit 139, p. 4. He sent a letter to the prosecutor before his trial asking her to help him secure substitute counsel, albeit on "very short notice."[2] Respondent's Exhibit 103, p. 11. He sought substitute counsel at both his

---

[2] It is unclear when, exactly Petitioner sent the letter to Ms. Plank. Although Petitioner claims that the prosecutor acknowledged receiving this letter on August 19, he stated on the record, "Oh, that's not the letter I was talking about." Respondent's Exhibit 103, p. 15.

September 9 and September 20 settlement conferences (presumably in Britt's presence) to no avail,[3] with Judge Bergstrom advising him at the September 20 settlement conference to take the issue up with the trial judge (which Petitioner did at his earliest opportunity).

Petitioner's untimely filing of his request to substitute counsel on the day of trial put the trial judge in a somewhat difficult position. However, as Petitioner indicated in his Bar Complaint, "I don't know what the protocol is or who to contact so I will write to all concerned." *Id* at 23. He did exactly that and requested a new attorney of Britt, the prosecutor, both settlement judges, and filled out a Bar Complaint all before asking the trial judge to substitute counsel. This record shows that although Petitioner's written request to substitute was not timely, he did not intentionally wait until the last possible moment to attempt to secure substitute counsel.

**B.   Adequacy of Inquiry**

More problematic for Respondent is the lack of an inquiry on the record into the conflict Petitioner alleged.[4] Instead, the

---

[3] It is unclear whether Judges Marshall and Bergstrom could have granted Petitioner's requests for substitution of counsel during the course of these settlement conferences.

[4] Where the trial court did not address this allegation, and where Britt passed away prior to Petitioner's PCR action, it does not appear that Britt ever addressed this issue. Britt's investigator, James Greve, provided a Declaration in the PCR action more than five years after Petitioner's trial. In the Declaration, Greve stated that he did not recall "Mr. Britt getting upset about petitioner using a racial slur in a police interview, storming off, or saying that he was 'done with this guy.'" Respondent's Exhibit 133, ¶3. He also could not recall that Petitioner ever desired a new attorney or that there had been a breakdown in the attorney-client relationship. *Id* at ¶4. This evidence was not developed in the trial court, and therefore not considered by the trial judge or Oregon's appellate courts during direct

judge ruled that "this is the time set for trial and I'm going to deny your request for substitution of counsel." Respondent's Exhibit 103, p. 11. Although Respondent asserts that the trial judge considered whether to revisit his decision on the substitution of counsel issue when he gave all parties an opportunity to speak on the request for a continuance, this was not the case. Specifically, when Petitioner attempted to revisit the substitution of counsel issue, the judge stated, "I've already denied that request. And now I'm . . . dealing with your request for a setover[.]" *Id* at 22-23. In this regard, the judge stopped considering the substitution of counsel issue when he first ruled on it. Where the record does not reveal a substantive inquiry into Petitioner's request for substitute counsel, this factor weighs in Petitioner's favor.

> C.  **Extent of Conflict**

In the absence of a substantive inquiry into Petitioner's allegations concerning his conflict with Britt, ascertaining the extent of any such conflict is challenging. Although the record is somewhat limited, from what the Court is able to discern the conflict was extensive.

On the day of his trial, Petitioner not only advised the trial judge that he and Britt had not been able to work together from the beginning, but made it clear that he did not even realize his trial was scheduled to take place that day. The

---

review. This Court therefore does not consider Greve's Declaration in its decision today. *See Cullen v. Pinholster*, 131 S.Ct. 1388, 1389 (2011) ("review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").

documents he submitted to the trial judge showed that Petitioner felt Britt had contempt for him, mocked him when he asked for a different attorney, and told him to stop "acting like a little kid" when Petitioner again advised Britt that he wanted a different attorney at their brief September 18 meeting.

When one asks why Britt might have harbored animosity toward Petitioner, he purported to be "done" with his client well before trial, walking out of their July 22 meeting after reading of Petitioner's use of a racial epithet as documented in a police report. On the day of trial, Britt stated on the record that he thought Petitioner's case was "despicable," opined that he did not "believe there's a juror in the entire country" who could show him any empathy, and said that it was difficult for him to conceive of a more inflammatory crime than those attributed to his client.

In addition, even though Petitioner had consistently rejected the State's plea offer, Britt made it clear that his client needed to "buck up" and "take some responsibility" just minutes before the trial began. Respondent's Exhibit 103, p. 22. For Petitioner, having repeatedly sought new counsel prior to his trial date due to his belief that Britt had "contempt" for him and could not be "impartial" towards him, these statements from his advocate on the day of trial must have been highly disturbing. Based upon the totality of the record, the conflict between Britt and Petitioner appears to have been both real and significant.

///

20 — OPINION AND ORDER

**D.    Resolution**

"[I]t is well established and clear that the Sixth Amendment requires on the record an appropriate inquiry into the grounds for [a request to substitute counsel], and that the matter be resolved on the merits before the case goes forward." *Schell,* 218 F.3d at 1025. The Sixth Amendment entitled Petitioner to a hearing on his request for substitute counsel that addressed his legitimate concerns, even if that hearing ultimately established that his concerns were not well-founded. Where the record is devoid of an inquiry into allegations of a particularly serious attorney-client conflict, and despite the fact that Petitioner only submitted his written request to substitute counsel on the day of trial, the trial court constructively deprived Petitioner of his Sixth Amendment right to counsel. *See Schell*, 218 F.3d at 1027 (constructive denial of counsel results in presumed prejudice); *Daniels v. Woodford*, 428 F.3d 1181, 1200 (9th Cir. 2005) ("Even if the trial court becomes aware of a conflict on the eve of trial, a motion to substitute counsel is timely if the conflict is serious enough to justify the delay."). Accordingly, upon an independent review of the record, the state-court denial of this claim amounts to an unreasonable application of clearly established federal law such that habeas corpus relief is warranted.

///

///

///

///

**CONCLUSION**

For the reasons identified above, the Petition for Writ of Habeas Corpus (#1) is granted. The parties shall have five days in which to submit a proposed form of judgment.

IT IS SO ORDERED.

__August 20, 2021__
        DATE

Marco A. Hernandez
United States District Judge

22 – OPINION AND ORDER